IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HOWARD AND GENEVA COLEMAN,<br>    Plaintiffs,<br><br>v.<br><br>NEW GENERATION MANAGEMENT,<br>    Defendant. | Civil No. 8:22-cv-01140-TDC |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE JURY TRIAL DEMAND**

The right to jury trial is a fundamental right under the Seventh Amendment. *Mowbray v. Zumot*, 536 F. Supp. 2d 617, 620 (D. Md. 2008). "[A] party seeking to enforce a contractual provision waiving the right to a jury trial must establish that the waiver was knowing and voluntary." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 530 (D. Md. 2011) (citing Mowbray, 536 F. Supp. 2d at 620). In determining whether the waiver was voluntary, a court will consider "(1) the relative bargaining power of the parties; (2) the conspicuousness of the provision; and (3) whether the provision is comprehensible." *Id*.

The jury trial waiver in the lease at issue should not be enforced as the factors weigh in favor of Plaintiffs. Plaintiffs were not sophisticated, "experienced business people" that Defendant claims. On the contrary, at the time Plaintiffs were dealing with their landlord, George Morcos & Sons, L.P., ("GMS"), whose name is on the lease agreement signed on February 2, 2015 ("Lease"), Plaintiffs were first-time business owners. *See* Exhibit 1, Geneva Coleman Affidavit. GMS, on the other hand, had been in the business since 1993. *See* Exhibit 2, GMS Business Record. Plaintiffs entered into their initial lease with GMS around 2004 for their first salon. *See* Exhibit 1, Geneva Coleman Affidavit. They did not purchase the salon from Mr. George Morcos, the owner

1

of GMS. *Id*., ¶ 2. Instead, their purchase was from Crystal Nick, the former salon owner and a tenant of GMS. *Id*. Upon learning about this transaction, Mr. Morcos provided the Plaintiffs with a lease that included their names, the effective date, and the monthly rent. *Id*. Plaintiffs had no opportunity to negotiate the terms; Ms. Morcos had informed them that it was a standard lease used uniformly for all GMS tenants. *See* Exhibit 1, Geneva Coleman Affidavit. In addition, as first-time business owners, Plaintiffs lacked prior experience in purchasing or negotiating commercial properties and leases. Their understanding was based solely on their knowledge of Crystal Nick's dealings with Mr. Morcos for years, as well as their belief in Mr. Morcos's integrity based on Ms. Nick's experience. *Id*., ¶ 8.

The Lease in question, signed on February 2, 2015, involved the same landlord, the only landlord that Plaintiffs had dealt with for a commercial lease. *See* Exhibit 1, Geneva Coleman Affidavit. Plaintiffs, having no experience in negotiating commercial leases, were never afforded the opportunity to discuss terms with Mr. Morcos. *Id*. The 2015 Lease, like the previous ones between Plaintiffs and GMS, was handed to them pre-filled with handwritten notes and initials, some of which were not Plaintiffs'. *Id*., ¶¶ 6, 7, and 11. This Lease was just like the other leases Plaintiffs had with GMS in that Plaintiffs were simply handed the agreement with no opportunity for negotiation; there were terms that Mr. Morcos informed Plaintiffs did not apply to them; there are initials that are not Plaintiffs' initials; the terms in the Lease, as Mr. Morcos maintained, were standard for all tenants. *Id*., ¶¶ 1-13.

Notably, the only "evidence" Defendant has provided to suggest that Plaintiffs were "experienced business people" were the "cross outs and/or white outs and/or initials in 16 different places" in the Lease. *See* Def's Memo., ECF No. 45-2 at 1. Defendant contends that these marks indicate "substantial and extensive negotiation." *Id*. However, these alterations were present on

the Lease before it was handed to the Plaintiffs, and some of the initials are not even Plaintiffs' initials. Moreover, there are no dates accompanying the cross outs, white outs, or initials to indicate when these changes were made, nor is there evidence to show that the changes occurred over the span of the nine-year lease term. *See* Lease Agreement, ECF No. 45-3. Thus, the Defendant's assertion that these handwritten modifications signify "substantial and extensive negotiation" is nothing but speculative. Plaintiffs, being inexperienced and first-time business owners, faced a significant disparity in bargaining power when dealing with Mr. Morcos, a seasoned, sophisticated business owner since 1993. Plaintiffs were unaware that negotiation of the lease terms was even an option due to their lack of experience and the routine practice of Mr. Morcos who, over the years, presented pre-marked agreements that did not invite or allow for negotiation. *See* Exhibit 1, Geneva Coleman Affidavit. Additionally, Plaintiffs did not seek legal counsel to assist with these agreements and relied on Mr. Morcos's presumed good faith, which further disadvantaged them and again underscores their lack of business acumen and sophistication.

    Furthermore, Plaintiffs could not have knowingly or voluntarily waived their right to a jury trial, as they were never aware of such a clause in the Lease. As was routine, the Lease, like all previous ones from Mr. Morcos, was simply handed to Plaintiffs with the assertion that all terms were standard and applicable to all tenants. *See* Exhibit 1, Geneva Coleman Affidavit. Moreover, the Plaintiffs had never encountered any issues with Mr. Morcos or the previous leases that would necessitate legal intervention. *Id*., ¶ 5. The concept of litigation was foreign to Plaintiffs, which again demonstrates their lack of business experience and sophistication. Unaware of the existence of a waiver provision within the extensive 48-page Lease, and unaware that such a provision could even exist in an agreement, Plaintiffs could not have knowingly or voluntarily agreed to waive their right to a jury trial.

Unlike what Defendant contends, the waiver provision at issue is not conspicuous, nor is it comprehensible. Paragraph K, titled "Waiver by Tenant," in its entirety provides,

> Tenant hereby waives any and all rights of redemption and all rights to relief from forfeiture granted by or under any present or future law. To the fullest extent permitted by law, Tenant waives the right to a trial by jury in any action, proceeding or counterclaim on any matter whatsoever arising out of or in any way connected with this lease, Tenant's use and occupancy of the Demised Premises, and/or any claim of injury or damage. If Landlord shall commence any proceeding for non-payment of fixed annual minimum rent, additional rent, or any other payment of any kind to which Landlord may be entitled or which it may claim hereunder, or for possession of the demised premises, Tenant will not interpose any counterclaim or set-off of whatever nature or description in any such proceeding; the parties hereto specifically agreeing that Tenant's covenants to pay rent or any other payments required of it hereunder are independent of all other covenants and agreements herein contained, provided, however, that this shall not be construed as a waiver of Tenant's right to assert such a claim in any separate action brought by Tenant.

Lease Agreement, ECF No. 45-3, at 30.

The clause in question is not one that a layperson, like Plaintiffs, would just understand with no special legal training or business sophistication. Indeed, the cited provision is fraught with complexities that obscure its true significance, particularly for individuals without legal expertise. It employs complex legal terminology and phrases such as "rights of redemption," "relief from forfeiture," "independent of all other covenants and agreements," "demised premises," etc., which are not part of everyday language and require specific legal knowledge to comprehend fully. Moreover, the length and structure of the clause contribute to its opacity, combining multiple legal concepts into one dense paragraph. This easily overwhelms a layperson or an inexperienced businessperson, such as Plaintiffs, making it challenging to grasp the individual elements and implications, notably the critical component about waiving the right to a jury trial. In addition, the waiver of the jury trial right is embedded within a larger, multifaceted sentence that intermingles various unrelated legal issues, with no clear emphasis or separation from other terms. This is

problematic as it diminishes the conspicuousness of the provision and makes it difficult for a layperson to realize the loss of a fundamental right.

Moreover, the implications of waiving a jury trial are not clearly stated, and the waiver is grouped with other terms, which can obscure the importance and specific consequences of such a decision. Specifically, while the initial part of the clause seems to remove the tenant's right to a jury trial, the latter section introduces a potential exception. This exception pertains to "Tenant's covenants to pay rent or any other payments required of it," suggesting that a tenant may still pursue legal actions related to these payment obligations. Therefore, if claims related to a tenant's obligation to pay rent or other required payments are indeed exceptions to any waiver of any rights, then the jury trial waiver should not apply to such claims, which are central to this current lawsuit.

Also, GMS, the landlord, who is ostensibly a more experienced and sophisticated business owner, provided no guidance or clear indications regarding this critical waiver. Such signposting is essential to ensure that tenants, like Plaintiffs, have at least an opportunity to contemplate the terms and consider seeking legal advice if needed. The absence of this guidance means that the Plaintiffs were not given a fair chance to comprehend or challenge the waiver. These factors collectively demonstrate that the waiver clause does not meet the standards of conspicuousness and comprehensibility necessary for laypersons, first-time business owners, like Plaintiffs to knowingly relinquish such a fundamental right.

It must be emphasized that at the heart of this lawsuit is Defendant's assertion that the Lease had been modified to mandate Plaintiffs pay "Common Area Maintenance" (CAM) fees. However, Defendant is selectively enforcing provisions of the Lease, choosing to uphold only the jury trial waiver while disregarding other terms as agreed upon on February 2, 2015, between Plaintiffs and Mr. Morcos. This selective enforcement compromises the integrity of the entire

agreement and raises serious concerns about the fairness and legality of recognizing one clause while disputing others. It is both inconsistent and unjust for Defendant to enforce the jury trial waiver against Plaintiffs while denying the validity of the remaining Lease terms. Defendant should not be allowed to benefit selectively at the expense of Plaintiffs' rights.

Last but not least, Plaintiffs never entered into any agreement with Defendant. *See* Exhibit 1, Geneva Coleman Affidavit. Even if a jury trial waiver was in place, it pertained to an arrangement with Mr. Morcos, not with Defendant New Generation Management, who emerged unexpectedly, did not sign any agreement with Plaintiffs imposing CAM fees, nor did they honor the existing Lease between Plaintiffs and Mr. Morcos. Instead, Defendant falsely accused Plaintiffs of owing fees not stipulated in any signed agreement between the parties, wrongfully evicted them, and caused irreparable damage to Plaintiffs through no fault of their own.

For the foregoing reasons, Plaintiffs' demand for a jury trial should not be stricken.

Respectfully submitted,

By: \_\_\_\_\_/s/_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C. 20003
Tel.  (202) 486-3478 |
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on 21st of June 2024, I filed the foregoing Memorandum in Support of Plaintiff's Opposition to Defendant's Motion to Strike Jury Trial Demand by electronic filing to all Parties.

/s/ Dionna Maria Lewis